IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PATSY WOODELL,

    Plaintiff,

v.                                                                  No. 22-cv-00733-JCH-GBW

VIVINT, INC., VIVINT SMART HOME;
JOHN DOE SALES REPRESENTATIVE
JOHN DOE INSTALLATION TECHNICIAN;
JOHN AND JANE DOES I-X;
BLACK and WHITE CORPORATIONS I-X;
ABC PARTNERSHIPS I-X; and
ABC ORGANIZATIONS I-X,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiff Patsy Woodell alleges that the failure of Defendant Vivint, Inc.'s product exacerbated the injuries she suffered after a fall. Vivint, pointing to an arbitration agreement with Ms. Woodell, moves this Court to compel arbitration. *See Defendant Vivint, Inc.'s Motion to Stay Matter and Compel Arbitration* (ECF No. 4). Because the arbitration agreement is enforceable, the Court grants Vivint's motion.

**I.    Background**

In May 2017, eighty-eight-year-old Patsy Woodell contracted with Vivint for security monitoring and life-alert services at her home in Eunice, New Mexico. *See* Compl. ¶¶ 10-14 (ECF No. 1-1). The services included a panic button. *See id.* ¶ 15. If Ms. Woodell suffered an emergency, she understood that she could press the button, and a twenty-four-hour monitoring system would send help. *See id.*

Ms. Woodell fell and broke her hip in September 2018. *See id.* ¶ 16. Ms. Woodell recounts that she laid on the floor with her broken hip, constantly pushing the panic button for over twelve

1

hours. *See id.* ¶ 17. The emergency system failed. *See id.* Ms. Woodell's housekeeper eventually found Ms. Woodell, but only after the twelve hours passed. *See id.* ¶ 18. The housekeeper called 911. *Id.* According to Ms. Woodell, the twelve-hour delay without Vivint's aid exacerbated her injuries. *See id.* ¶ 20.

So Ms. Woodell sued Vivint in state court, alleging negligence, negligent entrustment, product liability, and negligent infliction of emotional distress. *See id.* at 6-8. Vivint removed the case to this Court. *See* Notice of Removal (ECF No. 1). Next, Vivint moved to compel arbitration. *See* Notice of Removal (ECF No. 12).

Vivint's motion rests on its two contracts with Ms. Woodell. The first contract (the Retail Installment Contract, or "RIC") includes a choice-of-law provision. *See* Def.'s Ex. C, at 2 (ECF No. 4-3) ("You agree that the law of the State of New Mexico will govern this transaction, which is the state where the home to be improved is located. Federal law may also apply."). The second contract (the System Purchase and Services Agreement, or "SPSA") includes an arbitration agreement. *See* Dec.'s Ex. B, at 3, ¶ 19 (ECF No. 4-2) ("Each party agrees to binding arbitration as the sole and exclusive remedy for any controversy, dispute, or claim of any kind or nature between the parties and their respective affiliates . . . . The arbitration shall not be conducted pursuant to the Federal Arbitration Act, but shall be conducted in accordance with the arbitration law of the State of Utah."). The arbitration agreement is in its own paragraph with the underlined header, "Binding Arbitration." *Id.* The font is extremely small: the Court estimates that about 4,850 words are on the page with the arbitration agreement. *Id.*

Ms. Woodell responds with more factual allegations: "Defendants, or Defendants' representatives did not inform Plaintiff of the arbitration clause and could not have reasonably

expected an 88-year-old citizen to be able to see, read, and understand such terms of a contract that were presented in such a way as they were here." ECF No. 12, at 2.

**II.     Discussion**

The Federal Arbitration Act ("FAA") makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.[1] The FAA is a body of federal substantive law establishing and regulating the duty to enforce arbitration agreements. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985). The statute "requires courts to enforce [arbitration agreements] according to their terms." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (citing *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)).

Even though the FAA "places arbitration agreements on an equal footing with other contracts," *id.*, the "existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked." *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1997). State-law principles of contract formation guide this threshold inquiry. *Id.* And under state law, arbitration agreements may be invalidated by "generally applicable contract

---

[1] Ms. Woodell contends that the New Mexico Arbitration Act applies if the Federal Arbitration Act would yield a different outcome. *See* ECF No. 12, at 4. Vivint also analyzes the New Mexico Arbitration Act. *See* ECF No. 4, at 5-6 (citing NMSA 1978 § 44-7A-8(a) (2001)). The Court need not address Ms. Woodell's contention about which arbitration act applies. Both the New Mexico and the Federal Arbitration Act lead to an analysis of New Mexico law on procedural unconscionability, so both would net the same result. *See, e.g.*, *Strausberg v. Laurel Healthcare Providers, LLC*, 2013-NMSC-032, ¶ 48, 304 P.2d 408 ("We start with a discussion of New Mexico's unconscionability doctrine, noting that both New Mexico law and federal law require courts to apply generally applicable principles of contract law to arbitration agreements.").
    Vivint also cites Utah law for support. ECF No. 4, at 5. But Utah law will matter only once arbitration begins. *See* ECF No. 4-2, at 3, ¶ 19. Following the parties' contract, New Mexico and federal law controls the question of whether to compel arbitrate. ECF No. 4-3, at 2.

defenses, such as fraud, duress, or unconscionability." *Rent-A-Center*, 561 U.S. at 68 (quoting *Dr.'s Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

Courts employ a burden-shifting framework to analyze whether to compel arbitration. "[T]he party moving to compel arbitration bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement; if it does so, the burden shifts to the nonmoving party to raise a genuine dispute of material fact regarding the existence of an agreement." *Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 612 (10th Cir. 2014). If no material facts are in dispute, then a court may rule on the motion to compel. *Id.*

### A. Vivint's Formation Argument

Vivint points to the SPSA's arbitration agreement. *See* ECF No. 4-2, at 3, ¶ 19 ("Each party agrees to binding arbitration as the sole and exclusive remedy for any controversy, dispute, or claim of any kind or nature between the parties . . . ."). Ms. Woodell signed this contract on May 5, 2017. *See id.* at 2. The Court may thus presume that the parties formed an enforceable agreement under New Mexico law. *See Smith v. Price's Creameries*, 1982-NMSC-102, ¶ 13, 650 P.2d 825 ("Generally, a party who executes and enters into a written contract with another is presumed to know the terms of the agreement, and to have agreed to each of its provisions in the absence of fraud, misrepresentation or other wrongful act of the contracting party."). Vivint thus meets its initial burden to show that it formed an enforceable agreement with Ms. Woodell.

### B. Ms. Woodell's Defense-to-Enforcement Argument

Ms. Woodell responds that the parties never agreed to arbitrate any disputes. She argues that the circumstances of the SPSA's formation make the contract unconscionable and therefore

void. *See* ECF No. 12, at 7.[2] Ms. Woodell's challenge is to the formation of the entire contract, not just the arbitration agreement. *See* ECF No. 12, at 6 ("[A]ll terms found on page two of the SPSA, including the arbitration agreement, are unconscionable and should be held void by the court."). "Unconscionability is an equitable doctrine, rooted in public policy, which allows courts to render unenforceable an agreement that is unreasonably favorable to one party while precluding a meaningful choice of the other party." *Rivera v. Am. Gen. Fin. Servs., Inc.*, 2011-NMSC-033, ¶ 43, 259 P.3d 803 (quoting *Cordova v. World Fin. Corp.*, 2009-NMSC-021, ¶ 21, 208 P.3d 901). The party asserting unconscionability—here, Ms. Woodell—bears the burden of proving unconscionability. *See Strausberg v. Laurel Healthcare Providers, LLC*, 2013-NMSC-032, ¶ 48, 304 P.2d 408.

In New Mexico, a contract may be unenforceable for procedural unconscionability, substantive unconscionability, or a combination of both. *See id.* ¶ 32. Procedural unconscionability concerns the "particular factual circumstances surrounding the formation of the contract"; substantive unconscionability relates to "the legality and fairness of the contractual terms themselves." *Cordova*, 2009-NMSC-021, ¶¶ 22-23. The two work in an inverse relationship. *See id.* ¶ 24 ("The more substantively oppressive a contract term, the less procedural unconscionability may be required for a court to conclude that the offending term is unenforceable.").

Ms. Woodell addresses only procedural unconscionability. *See* ECF No. 12, at 5-7. The thrust of her arguments do not question the substance of the contract's terms (although she claims

---

[2] Ms. Woodell also argues that Vivint did not act in good faith when the parties formed their agreement. *See* ECF No. 12, at 5 ("Hiding terms in small font that someone with good eyes would need a magnifying glass to read does not demonstrate good faith."). She cites NMSA 1978, Section 55-1-304 (2006) for support. But that statute addresses an obligation of good faith in "performance and enforcement"—not formation. NMSA 1978, § 55-1-304 (2006). That said, the Court will consider the substance of Ms. Woodell's argument—i.e., the small font—when it considers procedural unconscionability.

that Vivint has no commercial need to settle this dispute via arbitration). *See id.* at 6. Because the two types of unconscionability have an inverse relationship, Ms. Woodell therefore needs to show a high level of procedural unconscionability.

The Supreme Court of New Mexico has provided indicia of procedural unconscionability: (1) a dominant party's use of high-pressure tactics; (2) the weaker party's need to accept the contract; (3) the relative scarcity of the subject matter of the contract; (4) the parties' relative education, sophistication, or wealth; (5) the absence of an opportunity for negotiation; and (6) the standardized form of the contract. *See, e.g.*, *Strausberg*, 2013-NMSC-032, ¶ 35, *Rivera*, 2011-NMSC-033, ¶ 44; *Guthmann v. LaVida Llena*, 1985-NMSC-106, ¶ 18, 709 P.2d 675. Contracts that satisfy indicia four, five, and six—that is, a "standardized contract offered by a transacting party with superior bargaining strength to a weaker party on a take-it-or-leave-it basis, without opportunity for bargaining"—are sometimes called adhesion contracts. *See Strausberg*, 2013-NMSC-032, ¶ 35 (quoting *Rivera*, 2011-NMSC-033, ¶ 44). Importantly, an agreement's status as an adhesion contract is insufficient to prove procedural unconscionability. *See Padilla v. State Farm. Mut. Auto. Ins. Co.*, 2003-NMSC-011, ¶ 14 n.3, 68 P.3d 901; *see also Davis v. USA Nutra Labs*, 303 F. Supp. 3d 1183, 1196 (D.N.M. 2018).

The six indicia do not rise to the level of procedural unconscionability here. First, Ms. Woodell does not contend that Vivint employed sharp practices or pressured her into signing the contract. To be sure, Ms. Woodell claims that Vivint's representative never mentioned or explained the terms on the SPSA's page that contains the arbitration agreement. *See* ECF No. 12 at 6. But Ms. Woodell does not cite law that would have obligated Vivint's representative to familiarize her with the contract's terms. And in bold, capital letters above the signature block, the agreement warns, "Do not sign this agreement before you read it . . . ." ECF No. 4-2, at 2, § 4. Ms.

Woodell's signature thus belies any argument that she lacked the opportunity to read or ask questions about the agreement. *See Smith*, 1982-NMSC-102, ¶ 13 ("Each party to a contract has a duty to read and familiarize himself with its contents before he signs and delivers it, and if the contract is plain and unequivocal in its terms, each is ordinarily bound thereby.").

Second, Ms. Woodell does not explicate a need that compelled her agreement. Undoubtedly, life-alert services may be invaluable in rural New Mexico. But Ms. Woodell provides minimal background giving rise to the parties' transaction.

Third, Ms. Woodell does not alert the Court to the scarcity of life-alert services in Eunice, New Mexico. For example, Ms. Woodell does not contend that if she refused to contract with Vivint, then she could not have found a different supplier.

Fourth, Ms. Woodell does not directly address the parties' relative bargaining power. She notes that Vivint did not advise her to seek legal counsel. *See* ECF No. 12, at 6. Again, however, she does not cite law that would have obligated Vivint to give her such advice. Nor does she suggest that she tried to obtain legal counsel or could not have done so. Still, the Court observes that Ms. Woodell was an individual consumer contracting with a corporation.

Fifth, Ms. Woodell states that she had no opportunity to negotiate different contractual terms. ECF No. 12, at 6. And sixth, Ms. Woodell's contract appears standardized.

Ms. Woodell emphasizes her age and the contract's font size. She claims that "she could also not have found [the arbitration agreement] and read it on her own." ECF No. 12, at 6. It is true that the font is extremely small—roughly twice as many words are on the single SPSA page containing the arbitration agreement than are in this entire memorandum opinion and order. But Ms. Woodell does not cite a case holding that fine print is enough to prove procedural unconscionability. To the contrary, cases recognize that a contract may be enforceable despite its

7

fine print. *See, e.g.*, *Davis*, 303 F. Supp. 3d at 1191, 1196 (citing *Kinkel v. Cingular Wireless, LLC*, 857 N.E.2d 250, 266 (Ill. 2006) ("The terms, including the arbitration clause . . . , are nonnegotiable and presented in fine print in language that the average consumer might not fully understand. Such contracts, however, are a fact of modern life. . . . It cannot reasonably be said that all such contracts are so procedurally unconscionable as to be unenforceable.")).

All in all, Ms. Woodell has shown that her agreement with Vivint is an adhesion contract. But she has not shown that the contract's formation was procedurally unconscionable. The Court will enforce the contract, and thus compel arbitration.

### III. Conclusion

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that *Defendant Vivint Inc.'s Motion to Stay Matter and Compel Arbitration* (**ECF No. 4**) is **GRANTED**:

1. This Court **ORDERS** Patsy Woodell to arbitrate the claims asserted in this action against Vivint, Inc., in accordance with the parties' arbitration agreement in the System Purchase and Services Agreement, *see* ECF No. 4-2, at 3, ¶ 19;

2. Vivint, Inc.'s request for an order to stay this lawsuit pending the completion of arbitration is **GRANTED**.

_____
SENIOR UNITED STATES DISTRICT JUDGE